31231. SOUTHERN RAILWAY COMPANY *v.* FARMER.

DECIDED SEPTEMBER 10, 1946. REHEARING DENIED OCTOBER 3, 1946.

*Wheeler, Robinson & Thurmond, R. W. Smith Jr.,* for plaintiff in error.

*B. Frank Whelchel, Joseph G. Collins,* contra.

GARDNER, J. ■ As to the general grounds, the recovery was authorized.

■ There are three special grounds. These grounds are to the same effect. During the progress of the trial the plaintiff offered testimony as to the market value of the mail truck immediately before and immediately after the alleged damage. The defendant objected to this testimony on the ground that under an act of Congress the ceiling price under the O. P. A. authority was the maximum measure of recovery. The court, over objection, allowed the plaintiff to prove that the market value of the truck immediately before the alleged damage was $1500 and immediately after, was $200. The defendant tendered a witness who testified that the ceiling price of the truck in question at the time of the alleged damage was $318. The plaintiff offered testimony to prove that the truck was equipped with a van body at a cost of $250. This body was included in the $1500 valuation by the plaintiff's evidence. The court sustained the objections to the admission of the testimony offered by the defendant as to the value of the truck under the O. P. A. ceiling price. The jury returned a verdict in favor of the plaintiff for $750. It is the contention of the defendant that the verdict could not have been, under any event, more than the ceiling price of $318 plus $250 for the body, making a maximum possible recovery under the law and facts, of not more than $568. Therefore, the only question for determination is, did the court err in submitting to the jury the market value of the truck immediately before the alleged damage and immediately after, and in thus excluding the O. P. A. ceiling price?

The President of the United States on October 2, 1944, approved an act of Congress providing in part: "In the interest of the National defense and security and necessary to the effective prosecution of the present war, to stabalize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents and to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal

market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living;" and for other purposes to fix a ceiling control price at which articles can be sold in the United States. U. S. C. A. Title 50, Appendix, sec. 901. "It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, . . in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206." U. S. C. A. 50, Appendix 904.

Counsel for the defendant contend that the O. P. A. ceiling price as fixed by the administration officials, under the act, determines the market value of the truck in question and supersedes the State measure of damages as to the recovery for a tortious act as well as a sale of motor vehicles. It will be noted from a reading of the act of Congress creating the O. P. A. that the express terms of the act refer to selling or delivering or buying or receiving in violation of the schedule made effective under the act. In our view, this court has no authority to read into the provisions of the O. P. A. Act, by implication, that its provisions should be extended to the negligent damage to articles of commerce mentioned in the act. Eminent counsel for the defendant argues that to sustain the judgment of the court below would be to allow a recovery on "a black market value for the thing injured or destroyed. If this is not the law of the land, then the law would simply hold out an inducement to racketeers who would sell an automobile above the ceiling price to expose it to destruction by railroads and others and thereby collect damages on a standard of value which could not be realized on a legitimate sale." We doubt that we are authorized to follow this sort of logic. To do so we would have to impute sinister motives to all owners of property seeking to recover damages for the tortious acts of others. To the contrary, we are enjoined to presume in all human activities, until the contrary appears, that persons will conduct themselves uprightly. For us to proceed on any other principle would be beyond our authority. We

conclude that the provisions of the O. P. A. should be administered according to its express terms insofar as it applies to the instant case. The provisions of the act of Congress from necessity, are general and permissive in nature, and in many ways can not be applied in equal justice to all. For this reason and without any criticism of the provisions of the act, it was never the intention of Congress to apply the terms of the act in an action for recovery of damages for a tortious act. The plaintiff in the instant case was not offering to sell his mail truck and no one was offering to buy it.

Counsel for the defendant cite Bowles v. Case, 149 Fed. 2d, 777. That case is not applicable to the facts of the instant case, for it had to do with the sale of timber. Our attention is also called to Graves v. U. S., 62 Fed. Supp. 231, and Charles Street Garage v. Kaplan, 312 Mass. 624 (45 N. E. 2d, 928). The facts and principles involved in the cases cited are not applicable to the instant case under its facts. Neither of them involves tortious acts. The exact question now before us, so far as we have been able to determine, has not been before the appellate courts of our State, or any other jurisdiction, save one. In Ross Produce Company v. Thompson (Iowa) 20 N. W. 2d, 57, Bliss, J., held that the measure of damages for the destruction of a motor truck, which was not replaceable at the O. P. A. ceiling price, was the fair and reasonable market value of the truck immediately before the collision, less its salvage value thereafter, not the O. P. A. ceiling price. The purpose of the Emergency Price Control Act (50 U. S. C. A. App. sec. 901, et seq.), "is to place a ceiling limit on prices in 'sales' of commodities, services, etc., or transactions reasonably within the scope of the term 'sales.' . . The matter between the parties resulting from the collision of the vehicles is not a voluntary sale of the truck or any other transaction within the purview of the act." Fugate v. State (Okl. Cr.), 158 Pac. 2d, 177; Tierney v. General Exchange Insurance Corporation, 60 Fed. Supp. 331.

Therefore we hold that the Emergency Price Control Act under which the O. P. A. was created, has no application as to the measure of damages in a suit for a recovery for the negligent act which causes damage to a motor vehicle of another.

The court did not err in overruling the motion for a new trial for any of the reasons assigned in the special grounds.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*